UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


**LINDA TERRY**
  Plaintiff

v.                      No. 3:11CV-00154-H

**MICHAEL ASTRUE**
  Commissioner of Social Security
  Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Julie Atkins. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 15 and 16, respectively. In addition, the plaintiff has filed a reply (Docket Entry No. 17). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 9, 2009, by administrative law judge (ALJ) Sheila Lowther. In support of his decision denying Title XVI benefits, Judge Lowther entered the following numbered findings:

1. The claimant has not engaged in substantial gainful activity since February 27, 2007, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: fibromyalgia; seizure disorder; mild degenerative disc disease of the lumbar and thoracic spine; hidradenitis suppurativa; depression; anxiety; personality disorder; and headaches (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is precluded from climbing ropes, ladders and scaffolds or working around hazards (i.e., machinery, heights). Furthermore, the claimant is limited to simple, repetitive tasks performed in two hour increments, in a task-oriented setting, without contact with the general public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on August 7, 1961, and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 27, 2007, the date the application was filed (20 CFR 416.920(g)).

(Administrative Record (AR), pp. 11-18).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant

physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The plaintiff does not challenge the ALJ's evaluation of her physical impairments. Her chief contention is that the ALJ's written decision fails to identify good reasons for the weight given to the opinion of her treating psychiatrist, Barry Rebeck. On March 31, 2009, Dr. Rebeck completed the "medical assessment of ability to do work-related activities (mental)" form, finding, among other things, that the plaintiff has "poor [or] no useful ability to function," in several areas, including the following (AR, pp. 554-555):

1. "Understand, remember and carry out detailed, but not complex, job instructions [because] chronic depression impacts upon cognition."

2. "Deal with work stresses [due to] chronic pain both of a physical and psychological nature ... chronic depression."

3. "Behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability [due to] mood stability."

In other words, Dr. Rebeck was of the opinion that the plaintiff's chronic depression renders her unable to deal with work stresses and affects her cognitive ability to perform detailed tasks and her emotional ability to act in a socially-acceptable manner and demonstrate reliability.

The ALJ accepted Dr. Rebeck's finding that the plaintiff cannot perform complex or detailed tasks and is limited to simple tasks (AR, p. 17). However, the ALJ declined to adopt Dr. Rebeck's opinion that the plaintiff cannot deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability sufficiently to perform the jobs of

unskilled inspector, handpackager, and assembler. The vocational expert (VE) testified that these jobs can be performed by a person who is limited to "simple, repetitive tasks to be performed in two hour increments in a task-oriented setting without contact with the general public" (AR, p. 46). The VE further testified that Dr. Rebeck's findings, if accepted, would render the plaintiff unemployable (AR, pp. 46-47). The plaintiff argues that the ALJ failed to identify good reasons for the weight given to Dr. Rebeck's findings. She does not contend that the ALJ was required to give controlling weight to Dr. Rebeck's disabling opinions or that the evidence in this case supports a judicial award of benefits. She requests only a remand for a new decision and further administrative proceedings.

### The "Treating Physician" Rule And The "Good Reasons" Requirement

The "good reasons" requirement in the context of an opinion from a treating psychiatrist was articulated in *Cole v. Astrue*, 2011 WL 2745792 (6th Cir.) as follows:

> The Commissioner has elected to impose certain standards on the treatment of medical source evidence. 20 C.F.R. § 404.1502. Under one such standard, commonly called the treating physician rule, the Commissioner has mandated that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir., 2004) (citing 20 C.F.R. § 404.1527(d)(2)).
>
> Importantly, the Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to

6

safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not." *Wilson*, 378 F.3d at 544. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." Id. at 544–45.

In *Cole*, the ALJ accepted the treating psychiatrist's diagnosis of major depression but did not adopt the psychiatrist's completion of a form similar to that completed by Dr. Rebeck. The ALJ found that Cole "attended church regularly" despite the fact that "Cole testified he never goes to church." The court noted that, in *Johnson v. Commissioner*, 2011 WL 2652192 (6th Cir.), it had previously held that "[t]he ALJ's focus on claimant's ability to do 'yard work' is misplaced [because] in his testimony he stated, 'I don't dig in the garden or anything like that, nothing heavy or manual.'" The ALJ further found that Cole "had never had interpersonal conflicts at work, despite his mental impairments," yet his psychiatrist "wrote in her notes that Cole has had past 'blow ups' at his place of employment." Under thee circumstances, *Cole* held that the ALJ failed to give "good reasons" for the weight given to the treating psychiatrist's residual functional capacity (RFC) findings. Indeed, "the ALJ did not assign a specific weight to [the psychiatrist's] RFC assessment. This alone constitutes error, as 'a finding that a treating source medical opinion ... is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole* quoting *Blakley v. Commissioner*, 581 F.3d 399, 408 (6th Cir., 2009).

The magistrate judge concludes that, in the present case, unlike *Blakley*, the ALJ did specify the weight she gave to the RFC assessment of Dr. Rebeck, to-wit, "some [but not controlling] weight" (AR, p. 16). Also, unlike *Cole* and *Johnson*, the plaintiff has not identified any finding by the ALJ of specific daily activities in excess of her testimony.

7

The ALJ found as follows (AR, pp. 16-17):

> The undersigned gives some weight to the opinion of the claimant's treating psychiatrist, Dr. Barry Rebeck. However, controlling weight is not assigned to this opinion because it is not specific in identifying the claimant's abilities or limitations; it appears to rely quite heavily on the subjective reports of symptoms and limitations provided by the claimant; and it partially conflicts with other substantial evidence, including the opinion of [the non-examining state agency program psychologist] Dr. Jay Athy [AR, pp. 276-278]. Some aspects of Dr. Rebeck's opinion are consistent with the [RFC] determined in this decision.

The ALJ also did not accept Dr. Rebeck's assignment of a Global Assessment of Functioning (GAF) rating over the past year of 45 as conclusive evidence that the claimant has disabling mental limitations (AR, pp. 17 and 555). "[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score." *Kornecky v. Commissioner*, 167 Fed.Appx. 496, 2006 WL 305648 (6th Cir.). In addition, we note that, notwithstanding his later "poor" ratings, Dr. Rebeck's treatment notes indicate that the plaintiff has "fair" judgment and insight and that the following functions are within normal limits (WNL): thought content, thought pattern, perceptions, cognition, concentration, cooperation (AR, pp. 485 and 514). The magistrate judge concludes that the ALJ identified good reasons for the weight given to Dr. Rebeck's opinions.

## The ALJ's Reliance Upon Dr. Athy's Findings

In her reply (Docket Entry No. 17), the plaintiff argues that the ALJ's reliance upon the opinion of the non-examining state agency program psychologist, Dr. Athy (AR, p. 16), was insubstantial because it did not take into account the later assessment and treatment notes of Dr. Rebeck, citing *Brooks v. Commissioner*, 2011 WL 2745822 (6th Cir.). According to *Brooks*:

> [I]t is not always illegitimate for an ALJ to decide to accord greater weight to an agency [psychologist] over a treating source: "In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." *Blakley v. Commissioner*, 581 F.3d 399, 409 (6th Cir., 2009) (citing Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). "One such circumstance may occur, for example, when the 'State agency medical ... consultant's opinion is based on a review of a complete case record that ... provides more detailed and comprehensive information than what was available to the individual's treating source.' ... [W]e require some indication that the ALJ at least considered [the subsequent medical records] before giving greater weight to an opinion that is not based on a review of a complete case record." Id.

Hence, the rule is that an ALJ must consider the effect, if any, of a subsequent medical opinion or evidence upon a prior opinion, not that the subsequent opinion automatically renders the prior opinion insubstantial. In *Brooks*, the court concluded that "there is no indication that the ALJ considered significant medical records generated after the agency [psychologist]'s ... assessment." In the present case, in contrast, the ALJ considered and the later assessment of Dr. Rebeck and gave it "some [but not controlling] weight" (AR, p. 16).

## **The ALJ's Credibility Assessment**

Finally, the plaintiff argues that the ALJ's credibility assessment did not comport with governing legal standards. The ALJ implicitly rejected Dr. Rebeck's disabling findings, which were predicated upon the plaintiff's chronic depression that allegedly resulted in no "useful ability" to deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Admittedly, this rejection was not supported by particularly strong objective evidence. A stronger case, for example, would have existed if the plaintiff were president of a charitable or civic organization or a key organizer of her class reunion. However, where an alleged limitation is mental and inherently subjective, there is no requirement that an ALJ's rejection of limitations based thereupon must be supported by particularly powerful objective evidence.

9

The Commissioner's credibility determination is an open-ended multi-factor approach. See 20 C.F.R. § 416.929 and Social Security Ruling (SSR) 96-7p. The ALJ and not a reviewing court is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The magistrate judge concludes that the plaintiff has failed to show that the ALJ acted outside her province or abused her discretion in determining that, if properly motivated, the plaintiff would be capable of the social demands of certain jobs that require no contact with the general public. Otherwise, the treating psychiatrist would have the last word as to whether a claimant is disabled in a case in which the allegations are subjective and the claimant presents uncontradicted testimony that her daily activities are minimal to none. Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir., 2004).

## **RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), any party shall have a period of fourteen (14) days, including intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a)(1)(B), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period. Fed.R.Civ.P. 6(d) and 5(b)(2)(E).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).